UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LONNY DEAN BRADSHAW,

          Plaintiff,          Case No. 1:16-cv-734

v.                                     Honorable Gordon J. Quist

UNKNOWN SAGE et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims under the Eighth Amendment, the Equal Protection Clause and the Due Process Clause. The Court also will dismiss Plaintiff's damages claim under Title I of the ADA. In addition, the Court will dismiss Defendant Unknown Party. The Court will serve the remainder of the amended complaint on Defendants Sage, Gilkie and Braman.

**Discussion**

    I.        Factual allegations

Plaintiff Lonnie Dean Bradshaw presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU). He sues MTU Classifications Director (unknown) Sage, MTU C-Unit Assistant Resident Unit Supervisor (unknown) Gilkie; MTU Deputy Warden (unknown) Braman; and an unknown doctor who worked at the Duane Waters Hospital in March 1999 (Unknown Party).

Plaintiff alleges that, in 1992 and 1993, he had cancer of an unspecified nature, for which he underwent surgery and radiation treatment. As a result of the surgery, he incurred damages to two nerve centers, the inguinal and femoral nerves.

On March 2, 1999, Plaintiff entered MDOC quarantine in Jackson, Michigan. He was seen at the Duane Waters Hospital by Defendant Unknown Party. Plaintiff alleges that Defendant Unknown Party neglected his medical care, apparently by failing to provide nerve medication and neglecting to place information in Plaintiff's record about his need to be placed in a bottom bunk. As a result, Plaintiff did not receive a bottom-bunk detail until 2016.

Between 1999 and 2015, Plaintiff was assigned a job on the yard crew, which required him to pick up papers and occasionally mow the grass or shovel snow. Plaintiff alleges that, by working this job, he gradually became able to walk much better and his limp was reduced. On September 3, 2015, Plaintiff was transferred to MTU. On October 20, 2015, Plaintiff was assigned a porter job. Plaintiff, however, could not perform the job duties of a porter, because the job required him to work too long. On November 23, 2015, after Plaintiff quit his porter job, Defendants Gilkie and Sage placed him on "double-O punishment," causing him to be confined to

his cell from 1:00 p.m. to 9:00 p.m., Monday through Friday.[1] (Am. Compl., ECF No. 8, PageID.32; Compl., ECF No. 1, PageID.6.)[2] Plaintiff has remained on unemployable status since that time and has not been assigned to a job that he can perform.

Plaintiff alleges that he tried to convince Gilkie, Sage and Braman that he should be assigned a job in the yard, but they did not change his assignment. As the result of being required to be in his cell for most of the day, unable to exercise or move freely, Plaintiff allegedly has been unable to engage in the self-care of working. He alleges that the inactivity has caused an increase in the symptoms arising from his nerve injuries: increased pain, increased weakness, and aggravation of his limp. In February 2016, Plaintiff went to health care about his increasing symptoms. He was prescribed a bottom-bunk detail. Plaintiff claims that, despite the detail, he has not been placed in a bottom bunk.

In Count I of his complaint, Plaintiff alleges that Defendants have violated his rights under Title I of the ADA, which prohibits discrimination in employment. In Count II, he contends that Defendants' actions have violated Title II of the ADA, by depriving him of the ability to participate in programs on the basis of his disability. In Count III, Plaintiff claims that Defendants have subjected him to cruel and unusual punishment by ignoring his reports that he was being negatively affected by the inability to work. In Count IV, he asserts that Defendant Unknown Party violated the Eighth Amendment by neglecting to indicate on Plaintiff's medical record that he had ongoing medical issues related to nerve damage caused during surgery. In Count V, Plaintiff claims

---

[1] Plaintiff appears to refer to his placement on unemployable status. A prisoner may be reclassified as unemployable for a variety of reasons, including when a "prisoner refused to accept, or fails to fully and actively participate in, a work assignment . . . ." MICH. DEP'T OF CORR., Policy Directive 05.01.100 ¶ X. A prisoner who is deemed unemployable "shall not be permitted to participate in any more leisure time activities than those who work full time." MICH. DEP'T OF CORR., Policy Directive 05.01.100 ¶ Z.

[2] The Court has referenced the original complaint, to the extent that it clarifies some of the allegations in the amended complaint.

that Defendants have violated the Equal Protection Clause by "punishing" him for doing a job that is ordinarily an "ask and get job." (*Id.*, PageID.35.) In Count VI, Plaintiff argues that he was put on unemployable status and confined to his cell during work hours without due process, in violation of the Fourteenth Amendment. Finally, in Count VII, Petitioner contends that Defendants committed the tort of negligence by denying him an opportunity to work on the yard crew, aggravating his medical problems.

Plaintiff seeks declaratory and injunctive relief, including a clearing of his work record and a transfer to another prison, together with compensatory and punitive damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

- 4 -

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Statute of Limitations

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[3]

---

[3] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff's complaint against Defendant Unknown Party is untimely. He alleges conduct by Unknown Party that occurred in March 1999. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims against Defendant Unknown Party accrued in March 1999 or shortly thereafter. However, he did not file his complaint until more than 18 years later – well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002). As a consequence, Plaintiff's claims against Defendant Unknown Party are time-barred.

### B. Due Process

Plaintiff claims that Defendants denied him permission to work his usual prison job without due process. He also claims that he was placed on unemployable status without due process and in violation of state law, despite the fact that he never requested the job he was assigned.

To the extent that Plaintiff bases his due process claim on a violation of MDOC policy, he fails to state claim. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94–2347, 1995 WL 236687, at *1 (6th Cir. Apr.21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Because Plaintiff

does not enjoy any federally protected liberty or property interest in state procedure, he fails to state a due process claim based on an alleged violation of prison policy.

Moreover, the Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from his classification to the porter job or his placement on unemployable status.

        **C.**    **Eighth Amendment**

Plaintiff next argues that Defendants Sage, Gilkie and Braman violated his Eighth Amendment rights by refusing to move him to yard duty, thereby causing his physical health to deteriorate from lack of exercise. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)

(per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

The Eighth Amendment affords prisoners a right to exercise sufficiently to maintain reasonably good physical and mental health.  *See Walker v. Mintzes*, 771 F.2d 920-927 (6th Cir. 1985).  Nevertheless, the Sixth Circuit "has never set a minimum amount of time a prisoner must have access to outdoor recreation." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (holding that confinement to a cell 23 hours per day, Monday through Friday, does not state an Eighth Amendment claim) (citing *Rodgers v. Jabe*, 43 F.3d 1082, 1086-87 (6th Cir.1995) (holding that no minimum amount of outdoor exercise is required to avoid Eighth Amendment violation)).  In the instant case, Plaintiff is confined to his cell only during the eight-hour workday to which he previously had been assigned.  Plaintiff provides no reason why he could not both exercise in his cell or use the time during which he was not confined to his cell to exercise.  Absolutely no basis

exists to support a conclusion that his confinement to a cell for eight hours a day, Monday through Friday, presented an objectively substantial or serious risk to his health or safety. He therefore fails to state an Eighth Amendment claim against any Defendant.

### D. Equal Protection

Plaintiff's allegations concerning his equal protection claim are extremely limited. He argues that he was deprived of equal protection because he "found out later on that no one gets punished for this particular job. It's an ask and get job!" (Am Compl., ECF No. 8, PageID.35.)

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). "[P]risoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, the Supreme Court squarely has held that disability is not a suspect or quasi-suspect class under the Equal Protection Clause. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 367-68 (2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442-47 (1985)).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To

prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegation of discriminatory treatment is wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege any fact in support of his claim that any other similarly situated prisoner was intentionally treated differently. He therefore fails to state an equal protection claim against any Defendant.

### E. ADA Claims

Plaintiff raises claims under both Title I and Title II of the ADA, alleging that Defendants have not accommodated his need for a job he can do, given his disabilities. He also alleges that his need for a bottom bunk has not been accommodated.

Title I of the ADA "prohibits certain employers, including the States, from 'discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Garrett*, 531 U.S. at 361 (citing §§ 12112(a), 12111(2), (5), (7)). Title II of the ADA "provides that no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).

Plaintiff has named three Defendants involved in his classification to unemployable status, his ongoing denial of prison employment, and his lack of a bottom-bunk assignment: Classifications Director Sage, ARUS Gilkie, and Deputy Warden Braman. Plaintiff does not specify the capacity in which he sues Defendants Sage, Gilkie and Braman. However, Titles I and II of the ADA do not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009); *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002) (holding that the proper defendant under a Title II claim is the public entity or an official acting in his official capacity); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (noting, in a Title I case, that individuals who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases). As a consequence, the Court will assume that Plaintiff intends to sue Defendants in their official capacities only.

Since adoption of the ADA, the Supreme Court has held that, by adopting Title I of the ADA, Congress did not abrogate the states' traditional Eleventh Amendment immunity from individual suits for damages. *Garrett*, 531 U.S. at 374. Plaintiff, therefore, may not bring a damages claim against the State or against Defendants in their official capacities. Accordingly, the Court will dismiss Plaintiff's damages claims under Title I of the ADA. Nevertheless, an official-capacity action seeking prospective injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar injunctive relief against a state official). Because Petitioner seeks prospective injunctive relief, that portion of his action is not barred by *Garrett*.

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and

vocational prison programs). In addition, the State of Michigan (acting through the MDOC and its officials) is not necessarily immune from Plaintiff's claims under Title II of the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's official-capacity ADA claims on Defendants Sage, Gilkie and Braman.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Unknown Party will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, the Court will dismiss Plaintiff's claims under the Eighth Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Further, the Court will dismiss Plaintiff's damages claim under Title I of the ADA. The Court will serve the remainder of the complaint on Defendants Sage, Gilkie and Braman.

An Order consistent with this Opinion will be entered.

Dated: October 7, 2016  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE