UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONNY DEAN BRADSHAW,

               Plaintiff,

v.

UNKNOWN SAGE, *et al.*,

               Defendants.

_____/

Case No. 1:16-cv-734

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131. This matter is now before the Court on defendants' motion for summary judgment for lack of exhaustion (ECF No. 21).[1]

### I.      Background

Plaintiff seeks relief against at the Richard A. Handlon Correctional Facility (MTU) Classifications Director Sage; MTU C-Unit Assistant Resident Unit Supervisor (ARUS) Gilkie; MTU Deputy Warden Braman; and an unknown doctor who worked at the Duane Waters Hospital in March 1999. Plaintiff alleged that, in 1992 and 1993, he had cancer of an unspecified nature, for which he underwent surgery and radiation treatment, resulting in damage to his inguinal and femoral nerves. This nerve damage affects his ability to perform some prison work assignments. After initial review of the complaint, the Court dismissed the unknown doctor, but concluded that plaintiff had

_____

[1] For the reasons discussed in a previous order (ECF No. 29), discovery is stayed pending resolution of this motion.

stated a claim under the ADA, alleging that defendants Classification Director Sage, ARUS Gilkie and Deputy Warden Braman did not accommodate (1) plaintiff's need for a prison work assignment that he is capable of performing and, (2) plaintiff's need for a bottom bunk detail. *See* Opinion (ECF No. 13).

## II.    Defendants' motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

2

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3.    Discussion

In his amended complaint, plaintiff alleged that the relevant grievance was submitted on February 9, 2016, as MTU-16-02-00141-028c ("141").  *See* Amend. Compl. (ECF No. 8, PageID.36).  The grievance (which only named defendants Gilkie and Sage) stated that they

4

discriminated against plaintiff by putting him on "double-0" (unemployable status)[2] rather than a porter job, and that they took away plaintiff's "reasonable accommodations for his disability cancer nerve damage and his disability diabetic activities and food needs" under the ADA.  *See* Grievance 141 (ECF No. 22-3, PageID.117; ECF No. 25-1, PageID.138).  According to defendants, the MDOC did not address the merits of Bradshaw's grievance because it was rejected on procedural grounds. The record reflects that the "Grievance is denied as PD 03.02.130 allows as it contains multiple issues."  *See id.*; *see also,* PD 03.02.130 ¶ G (providing in pertinent part that a "[a] grievance also may be rejected for any of the following reasons: 1. It . . .  contains multiple unrelated issues"). Plaintiff appealed to Step II, and then to Step III stating that he received "no response" to the Step II appeal.  *Id*. (ECF No. 22-3, PageID.116; ECF No. 25-1, PageID.140); *see* PD 03.02.130 ¶ BB ("[a] grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response").  After reviewing the Step III appeal, the MDOC stated that "THE REJECTION IS UPHELD."  *See* Grievance 141 (ECF No. 22-3, PageID.115; ECF No. 25-1, PageID.143).

In his response, plaintiff contends that his Step I grievance was sufficient, and that the MDOC violated its own rules by not interviewing him at Step I, not responding at Step II, and not sending him back all of the paperwork at Step III.  Plaintiff's arguments, however, do not address the issue at the heart of defendants' motion, i.e., his grievance was denied and rejected because it contained multiple claims contrary to PD 03.02.130.  As discussed, plaintiff's grievance included: a discrimination claim related to his lack of a prison work assignment; an ADA claim related to unidentified accommodations related to his "cancer nerve damage," an ADA claim related to

---

[2] *See* Opinion at fn. 1, PageID.66.

unidentified accommodations for his "diabetic activities;" and an ADA claim related to unidentified "food needs."  Based on this record, plaintiff did not properly exhaust the claims raised in this lawsuit.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.   Accordingly, defendants' motion for summary judgment should be granted.

### III.    Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 21) be **GRANTED** and that this action be **TERMINATED**.


Dated:  May 19, 2017                         /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).